UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:24-308 |
| FRANK SUESS, *et al.*, | : | (JUDGE MANNION) |
| Defendants | : | |

## MEMORANDUM

Pending before the court is defendant Victor Velazco's motion to dismiss counts of the indictment. (**Doc. 178**). For the reasons stated herein, the motion will be **DENIED**.

## I.    BACKGROUND

On November 13, 2024, a federal grand jury issued a 55-count indictment against defendants Frank Suess, Melissa Driscoll, Luis Salgado, Victor Velazco, Warren Pizik, Dave Singh, and Diana Castro. (Doc. 1). The indictment charged the defendants with conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §1349, ten counts of health care fraud, in violation of 18 U.S.C. §1347, and all but Castro with an additional ten counts of healthcare fraud. *Id.* Additionally, the indictment charged Suess, Velazco, Salgado, Pizik, and Driscoll with conspiracy to violate the anti-kickback statute, in violation of 18 U.S.C. §371, and sixteen counts of violation of the anti-kickback statute, in violation of 42 U.S.C. §§1320a-7b(b)(1)-(2). *Id.* It

further charged Suess, Velazco, and Driscoll with another thirteen counts of violation of the anti-kickback statute, conspiracy, in violation of 18 U.S.C. §371, obstruction of criminal investigations of health care offenses, in violation of 18 U.S.C. §1518, and two counts of destruction, alteration, or falsification of records in Federal investigations, in violation of 18 U.S.C. §1519. *Id.*

The charges stem from an alleged fraud scheme in which medically unnecessary prescriptions for "footbaths," containing a variety of prescription drugs, and solicited by marketers, were filled, netting profits for the owners of the pharmacies filling them and their co-conspirators. (Doc. 1).

On March 6, 2026, Velazco filed the present motion. (Doc. 178).[1] On April 8, 2026, the Government filed its brief in opposition. (Doc. 212). Finally, on April 22, 2026, Velazco filed a reply brief to the Government's brief in opposition. (Doc. 227). The motion is thus ripe for disposition.

---

[1] Velazco's motion contains legal arguments. The court notes, for future purposes, that Local Rule 7.5 requires that a motion and its accompanying brief in support be filed separately.

- 2 -

## II.    LEGAL STANDARD

Rule 7 of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim P. 7(c)(1). An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007) (internal quotation marks omitted). In other words, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989).

"Generally an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). A court should uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United*

*States v. Willis*, 844 F.3d 155, 161 (3d Cir. 2016) (internal quotation marks omitted). Additionally, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (citation omitted). "If the allegations in the indictment do not suffice to state an offense, Rule 12(b)(3)(B) authorizes dismissal; however, dismissal[ ] may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. Manganas*, 2017 WL 2547310, at *2 (M.D.Pa. Jun. 13, 2017) (citing *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000) ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence")).

## III.    DISCUSSION

Velazco argues that: (1) the indictment fails to state an offense for health care fraud and conspiracy to commit health care fraud, in relation to counts one through twenty-one, (2) the indictment fails to specify how he violated the anti-kickback statute or entered into an agreement to do so, in relation to counts twenty-two through fifty-one, and (3) that count fifty-five fails to allege any conduct by him and should be dismissed as a matter of

- 4 -

law. Each of these arguments will be addressed below in light of the three requirements for a sufficient indictment: "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Vitillo*, 490 F.3d at 320.

## A. The indictment contains the elements of the offenses intended to be charged.

An indictment that "tracks the language of the statute is sufficient." *United States v. Olatunji*, 872 F.2d 1161, 1168 (3d Cir. 1989).

Counts two through twenty-one charge health care fraud, in violation of 18 U.S.C. §1347, which provides that: "(a) [w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery or payment for health care benefits, items, or services" and that "a person need not have actual knowledge of this section or specific intent to commit a violation of this section." With respect to these charges, the indictment alleges that Velazco and his codefendants:

- 5 -

> knowingly and willfully did execute and attempt to execute a scheme and artifice to defraud Medicare and Union Benefit Fund, health care benefit programs as defined in Title 18, United States Code, Section 24(b), their sponsors, and various private plans, and to obtain, by means of false or fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody or control of those health care benefit programs, their sponsors, and various private plans, in connection with the delivery and payment for health care benefits, items, and services, with each prescription drug claim forming a separate count[.]

(Doc. 1, ¶¶ 111, 113).

Count one charges conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §1349, which provides that: "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The indictment alleges that Velazco and codefendants:

> did knowingly combine, conspire, confederate, and agree, with persons both known and unknown to the Grand Jury, to commit offenses against the United States and to defraud the United States, that is: To knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicare and Union Benefit Fund, health care programs as defined in

- 6 -

Title 18, United States Code, Section 24(b), and to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, Medicare and Union Benefit Fund, in connection with the payment of health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Doc. 1, ¶ 48).

As for counts twenty-three through fifty-one, they charge violations of the anti-kickback statute, in violation of 42 U.S.C. §§1320a-7b(b)(1)-(2), which provide that: "(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in party under a Federal health care program, or (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program," and "(2) Whoever knowingly and willfully offers any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—(A) to refer an individual to a person for the

furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good facility, service, or item for which payment may be made in whole or in part under a Federal health care program," "shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both." The indictment alleges that Velazco and codefendants:

> did willfully and knowingly solicit and receive remuneration and did offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is Medicare and its sponsors; and in return for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare and its sponsors[.]

(Doc. 1, ¶¶ 126, 128).

Count twenty-two charges conspiracy to violate the anti-kickback statute, in violation of 18 U.S.C. §1371, which provides that "[i]f two or more

- 8 -

persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." The indictment alleges that Velazco and codefendants:

> did knowingly combine, conspire, confederate, and agree, with persons both known and unknown to the Grand Jury, to commit offenses against the United States and to defraud the United States, that is: To knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and in return for the purchasing leasing, ordering, and arranging for and recommending the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare . . . and To knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person and to induce such person, to refer individuals for the furnishing and arranging for

the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is Medicare[.]

(Doc. 1, ¶ 115).

Finally, count fifty-five of the indictment charges destruction, alteration, or falsification of records in Federal investigations, in violation of 18 U.S.C. §1519, which provides that: "[w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both." The indictment alleges that Velazco and codefendants:

did knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in purported invoices from MedX to Sterling Pharmacy, which were records, documents, and tangible objects, with the intent to impede, obstruct, and influence the investigation and proper administration of a

- 10 -

federal grand jury investigation, a matter that the defendants knew and contemplated was within the jurisdiction of the U.S. Attorney's Office for the Middle District of Pennsylvania, a department and agency of the United States.

(Doc. 1, ¶ 153).

Upon consideration of the above, it is clear to the court that the indictment sufficiently contains the elements of the offenses to be charged, i.e., it tracks the language of the relevant statutes.

### B. The indictment apprises Velazco of what he must be prepared to meet and allows him to invoke double jeopardy in the event of a subsequent prosecution.

Read "as a whole and interpreted in a common sense manner," the indictment also satisfies the second and third elements required for a sufficient indictment. *United States v. Lee*, 359 F.3d 194, 209 (3d Cir. 2004) ("criminal indictments are to be read 'as a whole and interpret[ed] in a common sense manner'") (quoting *Gov't of Virgin Islands v. Moolenaar*, 133 F.3d 246, 250 (3d Cir. 1998)); *see also Mattia*, 157 F.4th at 312 ("a fair, holistic, and common-sense interpretation of the terms in the context in which they are used in the . . . Indictment fairly apprises [the defendant] of what he needs to meet at trial").

Summarizing the allegations in the indictment, Velazco in his role as Vice President of Wellington Rx, alongside Frank Suess, "used nominee

- 11 -

owners to acquire control of independent pharmacies in various geographic locations in order to conceal their own involvement in the business affairs of those pharmacies." (Doc. 1, ¶ 49). He then worked to steer high-cost, medically unnecessary, mail drug orders, such as "footbaths," containing a variety of prescription drugs, to those pharmacies. *Id.* He also formed relationships with marketers "to identify beneficiaries whose insurance providers could be billed for high-cost prescription drugs," and advised nominee owners on how to handle foothbath orders. *Id.*, ¶¶ 51, 57. He also engaged in frequent strategic communications with co-conspirators. *See id. generally*. The scheme ultimately netted profits via kickbacks for the co-conspirators. Furthermore, even after footbath orders started to get denied, and pharmacies came under investigation for the fraudulent activity and were shutdown, Velazco and co-conspirators continued their efforts to further the conspiracy through alternative means. *Id.*, ¶¶ 89, 93. Later, Velazco conspired to obstruct the Government's investigation into the fraud scheme and did obstruct the investigation by working to falsify a marketing services agreement between MedX Marketing Solutions and Sterling Pharmacy that was submitted to the Government in response to a subpoena of Sterling Pharmacy. *Id.*, ¶¶ 131-146. Indeed, Velazco allegedly personally "pressured"

co-defendant Luis Salgado of MedX into signing the false marketing services agreement. *Id.*, ¶ 140.

The indictment thus "adequately apprise[s]" Velazco "of what he must be prepared to meet." *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012). Moreover, there is enough "factual or legal information" included in the indictment for Velazco to "prepare his defense." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1999). As the Government makes clear in its brief in opposition, the indictment goes beyond the minimum requirements and provides the evidentiary bases for its charges in extensive detail, which the court need not recount in any more detail than its present summary. *See* (Doc. 212 at 21-31) (outlining the allegations in the indictment against Velazco and the evidence supporting them). In the event of a subsequent prosecution, it is apparent to the court that the indictment is sufficiently clear as to the factual circumstances underlying the charges, such that Velazco will be able to plead a former acquittal or conviction.

### C. Velazco's arguments largely challenge allegations against him, rather than the sufficiency of the indictment.

Velazco's arguments tend to challenge the strength of the Government's evidence and rationale for charging him. As the Government notes:

- 13 -

Though Velazco styles his motion as a challenge to whether his conduct, if true, would constitute violations of the charged offenses, Velazco appears, in reality to disagree with the allegations against him. *See, e.g.*, Doc. 178 at 12-13 (arguing that the Indictment "fails to establish . . . *scienter*" because it "fails to create even an inference that Mr. Velazco's email communications reflected knowledge or awareness that the fulfillment, shipment, and billings of foot bath prescriptions were fraudulent"). Relatedly, Velazco previews a likely defense theory at trial, repeatedly contending that he lacked "decision-making authority" over relevant matters. *See, e.g.*, Doc. 178 at 10-11. Finally, Velazco appears to take issue with the Indictment's level of detail regarding certain aspects of the alleged offense. *See, e.g.*, Doc. 178 at 12. None of these arguments are appropriately raised in a motion to dismiss.

(Doc. 212 at 19-20). The court agrees.

The Third Circuit has ruled that "a pretrial motion to dismiss is not a permissible vehicle for addressing the sufficiency of the government's evidence." *DeLaurentis*, 230 F.3d at 660; *see also United States v. Hartley*, 2022 WL 54558 (M.D.Pa. Jan. 5, 2022) (finding, with respect to a motion to dismiss counts from this same defendant, that his "argument attacks the charges themselves, not the sufficiency of the Indictment"). As established above, the indictment is sufficient as it: "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of

- 14 -

what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Vitillo*, 490 F.3d at 320. Thus, to the extent that Velazco does not believe that the Government has provided sufficient evidence to support its charges, that will be a determination for the jury to make at trial, after Velazco has had the opportunity to defend against the charges.

## IV.    CONCLUSION

For the foregoing reasons, defendant Victor Velazco's motion to dismiss counts of the indictment will be **DENIED**. An appropriate order shall issue.

MALACHY E. MANNION
United States District Judge

DATE: 5/1/26
24-308-07

- 15 -